We'll hear argument next in United States v. Brown et al. Michael Brown, Corey Canteen, Carrie Vanderpool, William Bracey, Wendell Bell, and Jason Moyes' matters on submission. So I would urge counsel to sit in order, if possible, of the presentation. And let's proceed. I'd also let the United States know, the government know, that although I've allotted 25 minutes, they do not have to use all 25 minutes. Okay. Jane Myers, and I represent the lead defendant, Michael Brown. Mr. Brown's argument before this Court is twofold. First, that there was no proof of premeditation, and the facts simply did not establish it by a preponderance of the evidence. Therefore, those two acts of attempted murder were not, in fact, leading – they did not, in fact, lead to the correct guidelines range. And because the Court could, in fact, have been using an overly high guidelines range to make its determination of the sentence, it should be reviewed and sent back to the district court for recomputation. But with regard to the premeditation, my understanding is the district court found that in the 2008 attempt, Brown took a gun and went to a different neighborhood with the intent to shoot and kill someone. In the 2011 attempt, he shot his gun several times, missed, and ordered his associate to shoot the same person. How are those facts not evidence of premeditation that the district court was entitled to take into account here? First of all, I want to say very clearly that those facts are not supported by the record. They're not supported by anything in the record that was before the Court. What they are not supported by specifically is the plea allocution. Another thing they're not supported by is the government's arguments. The third thing they're not supported by is the pre-sentence report. Where did the government, where did the district court? And this is, in fact, quite an interesting question. There is some reference to, because of course Mr. Brown is the first defendant to plead in this entire case, he is the first pre-sentence investigation report to be filed, and it appears that there is some reference to subsequent investigation or other defendants pre-PSRs, but that is not really established and the Court does not state anything, nor does the government, frankly, that would establish any of those facts anywhere. So I don't really know. Sotomayor, did the defense counsel object? No, defense counsel did not object to this. And that should not preclude review of this, simply because under cases such as Molina-Martino and others from the Supreme Court, if you, in fact, do use an incorrect guidelines range, one that is, in fact, unduly high, you, further review is warranted. And that's true even if the sentence that was imposed falls within the proper range and even if defendants did not object. So that is why we're, excuse me? There is no objection to the district court that those, that explanation was without factual foundation in the record. Yes, that's our view. Okay. Thank you very much. May it please the Court. My name is Benjamin Gruenstein, and I represent Appellant Corey Canteen. The district court committed plain error in this case by sentencing Canteen pursuant to the 2015 guidelines, even though his sentencing occurred. Why isn't that waived, Mr. Gruenstein? Your Honor, it's not waived because there was no strategic decision that defense counsel wanted 2015 instead of 2016. The argument that he was making was that there was potentially an ex post facto problem applying 2016. Once the Court decided that 2015 was no longer, was no better for him than 2016, the right result should have been to go back to 2016 and see, well, is 2016 better? This was not an A or B. He could have pursued both. And the defense counsel, the Court, and the probation office all failed to realize that once 2015 was no longer, was not deemed more favorable, they should have looked at 2016. So why isn't this an ineffective assistance of counsel claim as opposed to a straightforward you're making, you're pressing a claim on direct appeal? Your Honor, there are two reasons why this is not an ineffective assistance of counsel claim. First of all, there was an error that was made. And the error was that the Court did not apply the correct guidelines. And that error, putting aside what defense counsel did, that error should be reviewed in this Court. Second, it's not clear, even if we go to A2255, that defense counsel will be deemed ineffective. During the sentencing, he did raise the argument that RICO conspiracy was not a crime of violence. He said that. Unfortunately, he did not say it under the 2016 guidelines. He referred to, he was referring to the 924C charge, that motion that had been made. And in truth, under the 2015 guidelines, he didn't have a good argument. So he came very close to making the right argument, but didn't quite. And that's why I'm not sure we would have an ineffective assistance of counsel claim. Given that the 2016 guidelines no longer has the residual clause, racketeering conspiracy is not a crime of violence. The government only presents cases from this circuit finding that racketeering conspiracy is a crime of violence under the residual clause, principally U.S. v. Ivezi from 2009. Of course, that no longer applies, because the residual clause was deleted from the 2016 guidelines. This part of the argument bootstraps on to the year of the guidelines manual. That's correct. If we, if the Court had applied, this is why there's prejudice. If the Court had applied 2016, the Court would have found that racketeering conspiracy was not actually a crime of violence. If it was error, was it plain error? Given all the uncertainty and the kind of tumult we've had in that area of the law, how can you say it was plain error for the district court? Your Honor, first, I'd like to be clear that, given that the defense counsel did raise the argument of racketeering conspiracy being a crime of violence, it's hard to say precisely that it was waived. The issue that was plain error is not the issue that Your Honor is referring to, but rather, should 2016 have been applied or 2015? On that, there was absolutely plain error, because the guideline says we apply the guidelines in effect at the time of the sentencing. The Court applied 2015 when she should have applied 2016. That was plain error. Although both parties had requested that. What's that? Both parties, both the government and your question. Right. So there's a question of whether there was a, and that's precisely why plain error is the standard of review. As for the further questions, all the tumult that's been going on in the Second Circuit and the Supreme Court, that's an issue for whether there was likely prejudice. I do want to raise one, well, two additional points. One, as I said, the government does not present any case law. They also do not argue for the modified categorical approach, which is the only way to find that racketeering conspiracy is a crime of violence. And I did want to raise one point that is not in our brief. Very recently in June, the Sixth Circuit did hold in bank that application note one, which states that conspiracies to commit themselves, to commit crimes of violence are themselves crimes of violence. The Sixth Circuit in bank held that that's inconsistent with the text of the guidelines and that the text of the guidelines must control. The Court there applied the Stinson v. United States case, holding that when the application note is inconsistent with the guidelines, the guidelines must control. So that's another argument why, even if racketeering were a crime of violence, conspiracy to commit racketeering is not a crime of violence. And if I may, the site is United States v. Havis, 927 F. 3rd, 382. It was from June of this year, the Sixth Circuit in bank. Thank you very much. Pardon me. I want to shoot. Good morning, and may it please the Court. I'm Sam Braverman for Mr. Cary Vanderpool. Judge, as a preliminary matter, the government, I assume the Court has received a letter of August 15, which indicates the government believes that count 8, which is the 924C count, should be vacated. Certainly I agree with that. I have no objection to that. That being said, Your Honor, the ---- It was 8 on S-8. It's the second count of conviction, but under the indictment, it was the eighth count of the indictment. And that was part of the plea agreement that he was required to plead to. And so I certainly agree with the government that that matter should be dismissed because of United States v. Davis. Therefore, Judge, so the Court now has two possibilities. The first one is to hear my argument on the sentencing. And to the Court's point, I, in fact, did object to this at the trial court level. And I briefed the Court on it. Judge Caproni asked for briefing in her typical style in 24 hours, and we all produced briefs in 24 hours. And on that point, I argued to her that there was, in fact, no factual basis to support the argument the government was making that it was murder in the first ---- well, government wasn't making that argument. But Judge Caproni was entertaining the question of whether it was murder in the first degree or murder in the second, and I argued that it was not because the factual basis was the defendant's allocution, which is that at the moment he shot, he had an intent to kill. But the premeditation requirement of murder in the first degree is not satisfied by that sentence, and I argued that point to the Court. So this is a preserved error. The other side is that the Court could just affirm the remaining count of conviction. And I reviewed 3745, which is the jurisdictional ---- I'm sorry, 3742 of 18 United States Code, which is the jurisdictional basis for this. And it appears to me, Your Honor, in my reading of that, the Court could just strike the count, grant the government's motion, and not remand the case back for further sentencing. And so the Court might ask itself, why is that valuable? Well, there are two reasons for that. The first one is a procedural matter here. Judge Caproni certainly well-versed in the law. Nobody can dispute that. The United States Supreme Court had originally, back in 2017 in a case called Dean v. United States, essentially made the argument that the judge is allowed to consider ---- a district judge is allowed to consider the total sentence that was to be imposed. Judge Caproni certainly would be aware of that case. But the Second Circuit did not abrogate its position, which was held in a case United States v. Brown. The United States did not hold its position in United States v. Chavez, I apologize, which is at 549 F. 3rd 119, 2008. So it was always this Court's position that the Court could not bifurcate that. You could only consider one count, and then you could consider the other count, but you couldn't consider both counts in the total sentence. So when in November, after the United States Supreme Court had ruled that the court ---- that the district court could do that, this Court in November, in a summary opinion, just affirmed its prior holding in Chavez, and that was United States v. Bonilla, which was a summary order, 16-2068. Mr. Brafman, what is your point? My point is that unless the Court here is willing to say that Judge Caproni erred in making a sentencing enhancement that is not supported by the record, that the Court should just remand it with the instruction that the 924C count should be dismissed and no further proceedings. I don't think the Court should remand it and say now she can reconsider the entirety of her sentencing decision, because I believe that's not supported by the jurisdiction of this Court. And I cite the 3742 and the arguments that I've made. It's not the normal course. I understand that. I know that there is discussion that in many circuits that we always send them back for reconsideration. What that means, in effect, is that the government now goes in and argues why the original sentence should stand, notwithstanding you've carved out an essential aspect of that decision. So right now you've got a concession from the government with respect to count 1. Is that right? I'm sorry. The second count. Count 8, count 2. Yes, sir. The count of conviction. Correct. The second count of conviction. Yes, Your Honor. And you are, I think, arguing that we should just sua sponte or no sua sponte strike the other count of conviction. You should strike the count of the 924C on the government's motion, and I would consent to that. Okay. And then what you have left is the 84 months on count 1, the RICO count, and the judge, in my opinion, could either, you have jurisdiction to either remand it back and say that the judge has made an error by a sentencing enhancement that's not supported by the record, or B, you can say we affirm, but I don't think you can go back and say we should resentence him. It was 84 months. It was a total of 168. It was 84 on each of the two. Correct, Your Honor. Exactly right. So you're saying with the nullification of the brandishing count, we are in a position under the cases you've been citing to us to just direct the entry of a sentence for 84 months. Exactly correct, Your Honor. And the reason why practically that matters, if I can just complete that thought, practically it matters because my client is in programming now. He's been in jail without further incident now for nearly two years or certainly more than two years, and he's in programming now. If he is called back to the district court for resentencing, he's removed from programming. BOP will not give him credit for that programming, and he will have to start that programming again as a practical effect. He will come back here. He'll go from a prison situation where he's doing well to the MDC, which the court is well-versed, has not been the most hospital of inns, and that he will spend at least four months waiting for resentencing. What programming is he doing right now? So, for instance, Your Honor, right now he's in a nine-month program on accountant of all good things offered by the Bureau of Prisons. It's completed other programming on parenting skills, on decision-making, on anger management, things of that nature. And the ones he's completed, he'll keep those certificates. But the ones he has not completed, he will lose that credit, not get it, and then not go back. The practical effect is that if we move him out of here, we start a process that's no less than four months, and there's no reason I think that Judge Capone is going to change your sentence. We'll be sending him back for no practical effect on the justice system, but a practical effect on my client, which means that he not continue the program that he's in. Thank you. Thank you, Judge. You've also reserved some time for rebuttal. I have one. Thank you, Judge. Good morning, Your Honors. May it please the Court. My name is Bruce Bryan. I'm here on behalf of the appellant, William Bracey. What I'd like to do is speak with the Court about the impact of Davis on Mr. Bracey's case here. And this is something, as the Court is aware, the government has raised in Rule 28J letter, as I have also with the Court. And I submit it has two impacts on Mr. Bracey's case. First is that it undoes the what this Court has used the term not of calculation in how the Court arrived at sentencing Mr. Bracey. And the second is that it affects the voluntariness of his plea. So turning to the first contention here, how the way the district court judge determined Mr. Bracey's sentence as the judge determined many of the other sentences in this case was to compare, and this is when it came to the part of the sentencing for Section 3553A factors. And what the judge did was look at the relative culpability of all of the defendants. This is a pretty massive multi-defendant case. And the judge ranked who was most culpable and on down the list. And Mr. Bracey was placed in that ranking. And then the judge looked at what were the sentences that she imposed already for certain defendants and what the judge intended to impose for other defendants. And in that, seeing the relative culpability, see who was worse, see who was better, placed Mr. Bracey and gave him 33 years. And what's wrong with that? I mean, what's wrong with the process? Well, the process, because Davis now enters the picture. And the reason that Davis enters the picture, as this Court is aware, the government has filed Rule 28J letters saying we concede, you must vacate 924C convictions. And we have three of them here that are going, if this Court agrees with the government, that they're going to be vacated, Mr. Bell, Mr. Vanderpool, Mr. Moy. Now, particularly Mr. Bell, because at sentencing, the district court judge really very much compared to Mr. Bell. Mr. Bell, no question, has more serious culpability than Mr. Bracey. Well, Mr. Bell, who is in line to next come to argue, he has the basis of his conviction are two 924Cs convictions, one of which is a RICO conspiracy, which is under Davis. I think we're all pretty much in agreement under Davis. A RICO conspiracy is not a crime of violence. It is simply an agreement. It does not require as an element the use or threatened use of force. So it can't be sustained. Kagan. I'm sorry. I have Mr. Bell as having been convicted of carrying firearms in relation to involvement in racketeering conspiracy, and that's the one that is knocked out by Davis, and then discharging firearm during and in relation to assault and attempted murder in aid of violent actions, including murder, several murders. None of that goes away with Davis. Well, he pled guilty to two 924C charges. This is in the information. Yes. And then you get into the 3553A factors, which then opens in order to consider all of his conduct, but we have to then really look at what were, what's the basis or he has two convictions that create a situation of there has to be, have to be sentences as to each of those convictions. One of those convictions must be vacated under Davis, and it's the one where the predicate offense is RICO conspiracy. Now, the government has filed with this Court a Rule 28J letter saying, and I, counsel showed it to me this morning, it's in the docket for Mr. Bell, saying, conceding, that this, of the two 924C convictions, one of them must be vacated. So the point is here that this is undone. This is not of calculation, of comparison. We are very, I would submit, are dealing with a situation. But you are suggesting that Judge Caproni, based on all these proposed vacatures, would, on resentencing, see your client and sentence your client differently. Yes. Because she took into account all of these other sentences. And we're not in a position here, Your Honor, and this Court is not in a position to predict what the judge will do. Obviously, I don't think we're all going through this, going through the motions. Second thing is that when there's a resentencing under Pepper, there is the ability of the Court to consider circumstances that have changed and transpired. But that's your main argument. All right. Thank you very much. You've also reserved some rebuttal time. Mr. Urwitz. Good morning, Your Honor. Good morning. Stephen Urwitz on behalf of Wendell Bell. As prior counsel indicated, the government has conceded that count one has to be vacated under Davis. So I just want to focus on the sentencing issue, which is at the time he appeared for sentencing, Mr. Bell had already served 44 months on a State sentence that was based on the same conduct. The issue was whether he can get credit for that, notwithstanding a 924C. Is this an argument better made to Judge Caproni? It was made to Judge Caproni. And the reason why she rejected it was because she said even had he been convicted in Federal court for this conduct, the 924C would have to be in addition to that. What she doesn't take into account is the fact that Dean held that in determining the underlying sentence for the conduct, the Court could consider that there's going to be a 924C sentence, and therefore the Court could give, for example, one day on the underlying conduct and then follow it by the 924C. So not the case. Kagan. Even though we said in the Supreme Court, I guess, said in Gonzales that the plain language of 924C forbids a Federal district court to direct that a term of imprisonment under that statute run concurrently. And in fact, they can do that and kind of walk around that proscription by putting a sentence of just one day. Is that what you're saying? That's kind of what you're saying, isn't it? They take it into account. We've cited both Gonzales and Dean. I don't think the two cases are inconsistent. Right? What Dean said is you can't run a sentence. What Gonzales said is you can't run a sentence concurrent. What Dean said is, but you can determine in deciding what sentence to impose on the underlying conduct, you can look at the fact that there is going to be potentially a very long sentence, and therefore you can give a day. Here the issue is not whether this Court could impose a concurrent sentence, but whether the Court could give credit for that prior sentence. There is a difference, I would say, between credit and concurrent sentence, and that's what this Court said in Rivers. In Rivers it said that an adjustment under 5G1.3b is, quote, similar to that of a credit. And that's what we're at, what I'm advocating here, is that the Court was entitled to give, in effect, the sentence that it gave, but then credit for the State sentence that had been served already. That's what our argument is, and I think Dean just makes that argument stronger because had, as the district court said, had this conduct been before the Court and the Federalist Court, the Court certainly could have decided, considered, listen, I'm forced to give you a very lengthy sentence on the 924C, so therefore I'm going to give a much smaller sentence on the underlying conduct. And that's a straightforward argument, and the case has to go back for every sentence anyways, so we just — it's an issue that presumably will come up again, and that's essentially the argument. Roberts. Thank you very much. We'll hear from the government. May it please the Court. My name is Gina Castellano. I represent the government on this appeal. Your Honors, I'd like to start with Brown's argument. Brown fails to even address the fact that he has waived his ability to appeal his sentence. He was sentenced within the guidelines range of 168 to 210 months' imprisonment. He was sentenced to 210 months' imprisonment. And the plea agreement expressly stated that no direct appeal of the sentence within the guidelines range of 168 to 210 months' imprisonment would be taken, and that this provision is binding on the parties even if the Court employs a guidelines analysis different from that stipulated to herein. What Brown tries to do is say that the Court failed to enunciate any rationale for sentencing, but that is completely belied by the record here. The Court went through her own guidelines analysis and then spent eight pages of the guidelines waiver in the plea agreement, walking through the 3553A factors step-by-step. For that reason, Brown has waived. Well, the argument, I think, just to be fair to your adversary, Ms. Myers, is that the district court in determining the sentence abdicated its judicial responsibility to make certain findings in support of premeditation. And that is one basis to determine that the appellate waiver is unenforceable. Yes, Your Honor. So why don't you address that? Well, Your Honor, the district court did not abdicate its responsibility. It relied on the defendant's allocution at the time of the plea and on what was submitted to the Court from the government sentencing submission about the two attempted murders, the one in 2008 and 2011. And so the Court went through that reasoning, explained why, found intent plus premeditation, and therefore found that those attempted murders would have qualified as first-degree murders if they had been completed. Ms. Myers argued that those findings by the district court were inadequately supported in the record. What can you tell us about that? I can point you to the Appendix A-249, which is one page of the government sentencing submission that was submitted to the Court. And as Your Honor pointed out, those facts were not objected to at sentencing. I'll move on then to Mr. Bracey's argument. And to be clear, Your Honor, Davis has no effect on Bracey's appeal waiver here. Bracey pled to a RICO conspiracy. He did not plead to the 924C. And his plea to the RICO conspiracy was knowing and voluntary. Under the theory that Bracey's attorney is arguing now, every time any code defendant is sentenced, after his client, that sentence changes the knot of calculation. And everyone before him should be resentenced. That doesn't make any sense. What was the order of sentencing? Well — Was Mr. Bracey one of the last ones to be sentenced? No, he wasn't. And indeed, he was sentenced before Mr. Bell. He was sentenced on July 20, 2017. And Mr. Bell was sentenced on August 3, 2017. At the time of Mr. Bracey's sentencing, the Court specifically mentioned that she had sentenced three other — three code defendants who pled to murder. And that was Scott, Gilbert, and Williams. And those defendants, none of which are the subject of the government's 28J letters when discussing relative culpability. I'll move on to Mr. Canteen's arguments now. Your Honor, Canteen affirmatively waived his argument that the Court should have applied the 2016 guidelines. Make no mistake about it, this was a strategic decision. He was arguing that the 2015 guidelines should apply because he was arguing that RICO conspiracy was not a crime of violence under the residual clause of the guidelines in place at that time, which changed in the 2016 guidelines, and that his prior State robbery convictions were not crimes of violence because of both the residual clause and because the robbery was not enumerated in the guidelines itself in the 2015 guidelines, but was instead in the commentary. So we have never actually affirmatively affirmed what Judge Caproni did here, that is, particularly after Davis and so on. Is there any precedent that would — that you can point to that says that this is an appropriate way to proceed with respect to calculating the sentence? Your Honor, just to be — just to make sure I'm understanding the question, when you say what Judge Caproni did here, do you mean applying the 2015 guidelines? No, but even after applying the 2015 guidelines, I mean, your argument is that that was waived, right? So let's look at the 2015 guidelines, but then she proceeds to apply the enhancement by reference to other similar approaches, right? So is that right? I think we might be talking — I want to make sure I'm understanding, Your Honor. She then — she applies the 2015 guidelines and determines that under the 2015 guidelines, both RICO conspiracy and his prior State robbery convictions are crimes of violence. Right. And then is — And then she relies on Ivicides, right? She doesn't get to that. At sentencing, she doesn't get to that. She relies on that in her prior opinion in this case when certain defendants moved to dismiss the 924C count, but that is not part of the record, as I understand it, Your Honor. So I guess my question, and Mr. Grunstein alluded to this, is that she appears to undertake a modified approach in determining whether the enhancement applies. Have we — do we have any precedent that sanctions that approach in this context? With respect, Your Honor, I don't believe she takes a modified approach. I believe what she does — She looks at the underlying offense, does she not? She looks at the elements. Well, again, Your Honor, this was not — she looks at the elements of the underlying offense, which is what Ivicides says. So here we're talking about — we start with the substantive racketeering offense, right? And the substantive racketeering offense includes the elements of the predicates. That's what Ivicides says. Are you saying that she did not — that she adhered to the categorical approach  No, I'm saying that she did, Your Honor. But she did adhere to it. That she did adhere to it. What was charged here were murders, attempted murders, robberies, bank robberies. She looks to the elements of what was charged here, which is in line with this Court's decision in Saccone, which says you look to what's charged, not what the enterprise as a whole does. And — You're saying that's the equivalent of dissecting the statute itself and — and coming up with those elements. In other words, there's no daylight between the charge and what the statute required. That's correct, Your Honor. So you've got three defendants down. Keep going. A few more here. I just want to make one point on — one additional point on Canteen, and that's on the Havis, the Sixth Circuit case. That issue is just not preserved. It was not raised in any briefing. And the first time it's argued, it's here. So it's just simply not preserved. And in any event, United States v. Jackson, 60 F. 3rd 128, this circuit specifically held that Application Note 1 is binding. Okay. Moving on to both Vanderpool, Bell, and Moy. As Your Honors are aware, the government — Are you going to lump them together? I am, Your Honor. Deal with the 924C point? I am, Your Honor, if that's okay. Yes. What's left after the 26J letter? So, Your Honor, at this point — What do you want us to do? Remand for further proceedings. And Davis — Resentencing? Resentencing? For further proceedings so that the U.S. Attorney's Office can take a look at what's left and decide how to proceed. That's not why we remand. So we remand to a district court. What's left for the district court? It's got to be for resentencing or to do something else. Resentencing, Your Honor. Okay. Could you address, though, in specific the arguments made by your adversary about Mr. Vanderpool and his progress in programming and how this would actually — that there's precedent for separating out the two counts and we could just strike the sentence as to one? Why shouldn't we take that very much into account? Your Honor, Judge Caproni was bound by Dean, not by Chavez. And the Davis court specifically referenced Dean. I'm quoting here. And defendants whose 924C convictions are overturned by virtue of today's ruling will not even necessarily receive lighter sentences. As this Court has noted, when a defendant's 924C conviction is invalidated, courts of appeals routinely vacate the defendant's entire sentence on all counts so that the district court may increase the sentence for any remaining counts if such an increase is warranted. That's what Davis said. And again, the court — the district court was bound by Dean. That is not what the government is asking here. It — I believe it is, Your Honor. We're asking for — A vacature on all counts? No, Your Honor. The sentencing for resentencing on all counts. Yeah, that's what we're saying. Vacate the sentence and send it back for resentence. Got it. Yes. In its entirety, with whatever's left. That's correct, Your Honor. That's what I understand is on the table, but you said something slightly different. So vacate the sentences on the 924C counts and let Judge Capone resentence. That's correct, Your Honor. How does that deal with — I don't sense that you've really dealt with Judge Carney's question about the 84 months that is — could be just affirmed because of the program that he's successfully in. Your Honor, I think that there are two responses to that. One is that Mr. Vanderpool can waive his appearance at his resentencing. Second, if he chooses not to do that — He can waive his appearance. To what? And be sentenced in absentia? Yes, Your Honor. To what? I mean, the government's going to ask for the moon. Why in the world would he want to do that? The second option, Your Honor — Ah. Yeah. The first one doesn't make a lot of sense, so — Resentencing would be de novo. And so he can — all of these advances that his counsel has spoken about, the programs, he can — That's your answer. He could raise it there. Raise it there. Yes, Your Honor. But we understand that the Bureau of Prisons doesn't really take that approach and that, in fact, he loses credit for the programming time that he's committed already. He's been, you know, making progress here. And there seems to be precedent that maybe you are not able to respond to right now for our striking simply the sentence that is related to the count that is invalidated and retaining the other sentence. Do you believe that that would be legally incorrect? Yes, Your Honor. I believe that under Dean — You're supposed to extend it back for the complete review. Yes, Your Honor. Because courts might want to increase the sentence. And you're saying that in this particular situation that would apply to Vanderpool, but that Vanderpool would be free to make the argument that his sentence should not be increased because he's successfully operating the programs. That's correct, Your Honor. And that should all — all these arguments should be in front of Judge Caproni, of course. Your adversary, Mr. Waverman, wants us to do this in the first instance. But there's nothing preventing — Dean does not prevent us from doing that. You're just saying that the ordinary course is that it should go before the district court. Is that correct? Your Honor, I don't know of precedent for this Court to simply strike the 924C that's That would be a little unusual. Okay. Anything further? Unless Your Honors have any further questions, rest on our submission. Thank you. So we'll hear from counsel in rebuttal. Once again, actually, if this Court does not have any questions, I will rest on the arguments in my brief. Thank you very much. Congratulations. Mr. Grunstein. Just very briefly, Your Honors. To address the point that there was affirmative waiver, there was no strategic decision, as I said, to apply 2015 and not 2016. Once the Court decided 2015 was no more lenient, there was no reason for defense counsel not to ask for 2016. That was not a strategic decision. Also, the AUSA said that Ivazai was decided under the elements of the law. I'm sorry. So I don't quite get that. I mean, why wouldn't then the presumption be that you apply the 2016 since that was what was in effect at the time of the sentencing, right? That's exactly right. And it was just a miss by defense counsel. It wasn't a strategic decision that results in a forfeiture of the argument. It was just a miss. The argument was waived. I don't think there was some hope that there was some benefit to being in 2015. He thought there was hope to be in 2015. He was wrong. The Court said, no, there's no benefit to being in 2015. The Court should have applied 2016. Nobody was asking for 16. Isn't the district 2016? That's correct. That's why plain error should have applied. Well, it was invited error by counsel. Your Honor, respectfully, your argument, Mr. Greenstein, as I understand it, is that you can't waive what you don't know you're waiving. That's correct. That's correct. You only have forfeiture of the error when there's a strategic decision not to seek it, not where there was just a plain miss. Here, there was just a plain miss. And I just want to say on the argument of the AUSA, the Ivesi case was a case that was decided under the elements clause. I'm sorry. It was decided under the residual clause, not under the elements clause. I was actually the AUSA on that case. And then Judge Caproni in this case also decided the motion to dismiss under the residual clause, and that's in the docket at 597. So the question here is whether it should be considered a crime of violence under the elements clause. And that's, as Your Honor noted, that is the proposition for which there is no precedent in the Second Circuit. Thank you. Unless the Court has any questions about Mr. Vanderpool, I will waive my rebuttal. Thank you very much. Thank you. Your Honors, on behalf of Mr. Bracey, the government's statement, I think it's correct. Well, I shouldn't say. Careful. Yeah, careful. I don't want to step on toes here. The resentencing. It's why is it that the government's position is that it must go back for a full resentencing? The reason is it's undone the knot of calculation. And that's quintiary. And that's exactly the point. But you relied on Mr. Bell in significant part, at least to my ears. And he was sentenced after Mr. Bracey. The judge talked about Mr. Bell at Mr. Bracey's sentencing. So the judge had in mind Mr. Bell when the judge was sentencing. It was early on, but the judge already had a preconceived idea of comparatively how he would be sentenced. And, by the way, a very important point, and this is in the main part of the brief, and that is look at the sentences that ultimately happened here. Now, here there's no question, no question that Mr. Bell was far more culpable as a defendant. I mean, it really went through. In terms of the murder here, who, you know, who stomped on the head, who caused this person to die, it was Bell. The others kicked. They probably would not have died from what the others had done, including Mr. Bracey. Mr. Bell got here. Not a terribly sympathetic argument. No, it's not, it's not. But it's still, I mean, we're talking about large numbers in a sentence. But what I'm arriving at, though, is what did Mr. Bell get as a sentence here? Mr. Bell got 30 years. Now, how did that happen? He got 30 years by getting a 39-year sentence and getting 9 years credit for his state time served on the conduct involved in this case. 30-year sentence. Mr. Bracey got a sentence of 33 years here. And he got no time credit for the state time that he served in this, for the same conduct in this case. So here, there's no question in this record that Mr. Bell was much more serious and much more culpable as a defendant. And this was, even before Davis, the judge is not of calculation that he should get a sentence, Mr. Bracey should get a sentence less than Mr. Bell. And in the end, that did not happen. He got a more severe sentence. And then we have Davis come along, and it's made the situation worse. Roberts. Thank you very much. Thank you. Unless the court has questions, I don't believe that the government addressed the argument raised regarding the sentencing issue. I have nothing further to add. I will say I was defense counsel on Iviza and my co-counsel is correct. It was based on elements. And so it is a different situation. I was the USA on a couple of cases that were mentioned today. But that doesn't make it presidential. But thank you very much.